Dear Mr. Mobile:
You have enclosed a copy of a letter which you wrote to a town citizen in your capacity as alderman and mayor pro-tem for the Town of Port Barre. We assume the letter was paid for with public funds. In the letter you state:
 The Town of Port Barre has no zoning, therefore the two sites you are proposing on the east side of VFW Memorial Park Drive to develop HUD Section 202 elderly apartment complex and a HUD Section 811 physically disabled apartment complex can be considered properly zoned for these two projects.
 I fully support these two HUD programs and you are assured of my complete cooperation. Port Barre has many elderly and disabled people trying to live on Social Security and SSI income, which is very limited. These special need populations are being priced out of this rental market. There is a need for at least 32 elderly and 40 disabled apartments in Port Barre. Please keep me informed of your progress and I will be glad to help with any building permitting.
There is no provision of law which prohibits the municipality from using public funds to disseminate purely factual, unbiased information about governmental projects and programs to its citizens. See Attorney General Opinion 04-0370, copy attached.
However, both LSA-Const. Art. XI, § 4 (1974) and R.S. 18:1465(A) prohibit the use of public funds to urge the electorate to vote for any candidate or proposition, as cited below: *Page 2 
 § 4. Prohibited Use of Public Funds
 Section 4. No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated to a candidate or political organization. This provision shall not prohibit the use of public funds for dissemination of factual information relative to a proposition appearing on an election ballot.
 * * * * * § 1465. Prohibited use of public funds
 No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated to a candidate or political organization. This provision shall not prohibit the use of public funds for dissemination of factual information relative to a proposition appearing on election ballot.
There is a further statutory restriction against advertisements being paid for with public funds contained in LSA-R.S. 43:111.1:
 No public funds shall be used in whole or part for the payment of the cost of any advertisement containing therein the name of any public official whether elected or appointed; provided, however, that the provisions of this section shall in no case be construed to apply to advertisements or notices required or authorized by law to be published or to do any advertisements placed by any public agency or body authorized by law to advertise in the furtherance of its functions and duties.
In previous opinions, this office has recognized the distinction between the valid governmental function of providing the public information and the ultra vires activity of public relations. The prohibition of Louisiana R.S. 43:111.1 against advertisements paid for with public funds does not apply to the dissemination of factual information which does not have the intent to manipulate public opinion. See Attorney General Opinions 93-78, 92-484 and 92-127, copies attached.
LSA-Const. Art. XI, § 4 (1974) has been reviewed in Godwin vs. EastBaton Rouge Parish, 372 So. 2d 1060 (La.App. 1st Cir. 1979); writ den.; 373 So.2d 527 (La. 1979). The court's conclusions are relevant herein:
 [LSA-Const. Art. XI, § 4] was obviously intended to protect the public fisc by prohibiting expenditure of public funds for expressly proscribed purposes, namely, to promote or oppose any candidate for office, to promote or oppose the cause of any political organization, or to promote or oppose passage of any proposition *Page 3 
submitted to the electorate. Additionally, the provision is designed to prevent public officials from using public funds to support or oppose candidates, parties or propositions. Godwin, supra, at page 1063.
Your letter conveys mostly factual information regarding the proposed HUD development in Port Barre. While the law prohibits the use of public funds to urge the electorate to vote for any candidate or proposition, we note that the instant matter is not being voted upon. For this reason, the limitations of state law quoted above prove inapplicable.
All questions concerning potential violations of the Code of Governmental Ethics should be forwarded to the Louisiana State Board of Ethics, 2415 Quail Drive, Baton Rouge, LA 70808 phone:225-763-8777.
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
 Very truly yours,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 BY:__________________________
 KERRY L. KILPATRICK
 ASSISTANT ATTORNEY GENERAL *Page 1 
 ATTACHMENT OPINION NUMBER 04-0370
90-A-1 PUBLIC FUNDS CONTRACTS La. Const. Art. XI, Sec. 4 LSA-R.S.18:1465(A)
Addresses the issues to be determined with respect to the legality of the use of the public funds to pay postage associated with the mailing of a letter to a City Councilman's constituents.
Honorable Thomas D. Kates Councilman, District A Bogalusa City Council 1012 Poplar Street Bogalusa, Louisiana 70424
Dear Councilman Kates:
This office is in receipt of your request for an Attorney General's opinion regarding the legality of the use of the public funds of the City of Bogalusa to pay the postage required to send a particular letter, a copy of which is attached hereto, to your constituents.
Please be advised that that our research did not reveal any provision of law which would prohibit the City from using public funds to disseminate purely factual, unbiased information about governmental projects and programs to its citizens.
Please note, however, that La. Const. Art. XI, Sec. 4 andLSA-R.S. 18:1465(A) prohibit the use of public funds to urge the electorate to vote for any candidate or proposition, as well as the appropriation of public funds to any candidate or political organization. Attorney General's Opinion No. 98-49.
Attorney General's Opinion No. 91-634 considered the legality of four letters a Parish Councilman proposed to distribute to the residents of his district with public funds. That opinion notes that the distinction between what is and is not prohibited under these provisions of law is not always clear. Opinion 91-634 states:
 "Relevant factors that may be considered to determine the propriety of a particular expenditure include an examination of the purpose for the expenditure of public funds, the intent of the public agency and the reasonable effect such expenditure would have upon the electors. Atty. Gen. Op. Nos. 76-307, 79-1191, 89-418 and 90-126A. . .
 * * * The letters should also be examined to determine whether any elector is being urged to vote for or against any candidate. . ." *Page 2 
This office is not a finder of fact, and cannot make a determination as to the particular purpose, intent and effect of this particular letter. Unfortunately, we are constrained to advise that such a determination could only be made by the courts in their role as fact finders.
We do note that the attached letter appears to have, as at least a part of its purpose, advising the constituents of your district of certain safety projects addressed in your district. Such a purpose is not, in our opinion, prohibited by law. On the other hand, if the letter is considered to be more in the nature of reminding and urging the voters of your district to continue to support you as a candidate, the use of City funds to pay postage associated with the letter would be prohibited by law.
We hope the foregoing is of assistance. Please do not hesitate to contact us if we can be helpful to you and the City of Bogalusa in other areas of the law.
 Yours very truly,
 CHARLES C. FOTI, JR.
 Attorney General
 BY:__________________________
 JEANNE-MARIE ZERINGUE BARHAM
 Assistant Attorney General *Page 1 
 OPINION NUMBER 93-78
1-A-1 Advertising 15-A Constitutional Law 90-A-1 Public Funds Contracts
Article 11. Sect. 4 of the 1974 Constitution R.S. 18:1465; R.S.43:111.1
A governmental entity may utilize Public funds for the development and distribution of an informational poll so long as the information contained therein is purely factual information.
Mr. Lane A. Carson Chief, Civil Division Assistant District Attorney 905 Pearl Street Franklinton, LA 70438
Dear Mr. Carson:
You have requested an opinion of the Attorney General regarding the issue of whether public funds can be expended to conduct an informational poll of voters to determine public views and comments on tax proposals and governmental services.
The constitution prohibits the use of public funds to promote or defeat any candidate or proposition. Article XI, Section 4 provides:
 "Section 4. No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated to a candidate or political organization. This provision shall not prohibit the use of public funds for dissemination of factual information relative to a proposition appearing on an election ballot."
Similar language is found in our Election Code in LSA-R.S. 18:1465:
 "A. No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated to a candidate or political organization. This provision shall not prohibit the use of public funds for dissemination of factual information relative to a proposition appearing on an election ballot. *Page 2 
 B. Whoever violates any provision of this Section shall be fined not more than five hundred dollars or be imprisoned for not more than six months, or both. On a second offense or any succeeding offense, the penalty shall be a fine of not more than one thousand dollars or imprisonment for not more than one year, or both."
Finally, there is a further restriction against advertisements being paid for with public funds contained in LSA-R.S. 43:111.1:
 "No public funds shall be used in whole or part for the payment of the cost of any advertisement containing therein the name of any public official whether elected or appointed; provided, however, that the provisions of this section shall in no case be construed to apply to advertisements or notices required or authorized by law to be published or to any advertisements placed by any public agency or body authorized by law to advertise in the furtherance of its functions and duties."
In Godwin v. East Baton Rouge Parish School Board, et al.,373 So.2d 1060 (La.App. 1st Cir. 1979); Writ Refused, the court examined Article XI, Section 4, and concluded:
 "We find no merit in the argument that the provision is not self-operative. We note particularly that the provision does not prohibit public officials from supporting or opposing candidates, parties or propositions with their personal funds and resources, which admittedly they have a right to do. It only prevents their doing so with public funds.
 Nor do we find substance in Appellees' contention that the constitutional article requires legislative implementation because it is vague and uncertain in that it is not clear what is prohibited by the clause `urge any elector to vote for or against any candidate or proposition,' or what is permitted *Page 3 
expenditure for `the dissemination of factual information relative to a proposition appearing on an election ballot.' We find `urge' to be readily understood by an ordinarily informed and reasonable individual. According to Webster's Third New International Dictionary, Unabridged (1963), `urge' means . . . `to insist upon-to advocate or demand with importunity-to prosecute vigorously-solicit-be compelling . . . influence upon . . .'
 In our view, the authority to disseminate factual information relative to a proposition appearing on an election ballot encompasses all empirical data required by the public to intelligently decide whether to vote for or against the issue. Included in such information would of course be tax rates, if any, interest rates on bonds or other evidence of indebtedness purported to be issued and the term and provisions thereof, and an explanation of the expenditures contemplated. Such information may be disseminated in brochures or otherwise, provided they are purely factual and suggest no position for or against and make it clear that the data is published and disseminated solely and only for informational purposes."
Godwin, by its interpretation of Article XI, Section 4, concludes that, at least with regard to tax referendum elections (or contemplated, planned elections), the line between legality and illegality is that between advocacy of only one side of the public issue and the neutral statement of facts pertaining to all sides of an issue presented without bias.
The Attorney General has adopted the distinction between "public relations" and "public information" stated by the Louisiana Constitution, as interpreted and explained by Godwin, and applies it to the question of the proper expenditure of public funds for communications activity by government in government's ordinary, everyday course of business. Without specific, express authorization from the legislature by statute (i.e. drug education, economic development, etc.), the use of public funds to finance public relations techniques to *Page 4 
manipulate public opinion on public issues to create a body of public opinion favorable to a public official or entity, is ultra vires. However, the use of public funds to provide a public information function to a governmental office is integral to its constitutional and/or statutory power and function, and is lawful if its intent is to be factually informative. See Attorney General Opinion No. 90-126A.
The expenditure of public funds to conduct surveys and/or public opinion polls is not unlawful per se. It is the purpose for which the public funds are spent, and the intent of the agency or official making the expenditure which controls its legal character.
Hence, if the opinion poll sought to be conducted falls within the ambit of a true public information function, public funds may be used for its development and distribution. This is consistent with Attorney General Opinion No. 89-418 which held that the Northeast Louisiana Juvenile Detention Center Authority could legally contract with a consultant to conduct a survey over a seven parish area which the authority serves.
Care should be taken that the poll conforms to the elements comprising the dissemination of pure factual information as discussed inGodwin, as well as the requirements set forth in LSA-R.S. 43:111.1.
We trust this information is helpful to you. Should you have any further questions, please do not hesitate to contact our office.
 Sincerely,
 RICHARD P. IEYOUB
 Attorney General
 BY:__________________________
 ROBERT E. HARROUN, III
 Assistant Attorney General *Page 1 
 OPINION NUMBER 92-484
90-A-1 PUBLIC FUNDS CONTRACTS
LSA-Const. Art. XI, Sec. 4; LSA-R.S. 18:1465; 43:31(D); 42:111.1
Only purely factual information may be disseminated by the Governor's office concerning the Constitutional Convention where public funds are used to pay for the publication costs
Mr. Albert I. Donovan, Jr. Executive Counsel to the Governor P. O. Box 94004 Baton Rouge, LA 70804-9004
Dear Mr. Donovan:
This office is in receipt of your opinion request directed to Attorney General Richard P. Ieyoub dated July 13, 1992. The request has been assigned to me for research and reply. The following related issues are presented as stated in your request:
 (1) Can state funds be used to produce and mail letters to Louisiana residents if the letters will promote the Constitutional Convention and advocate its results? and
 (2) The Archives photographer for the Secretary of State has the necessary equipment and skills to produce a videotape of Governor Edwards speaking on the Constitutional Convention. This videotape will be provided to Louisiana television stations. Can this office utilize the photographer's services during his regular work hours, or in the alternative, can state funds be used to employ him during his non-working hours?
The constitution prohibits the use of public funds to promote or defeat any candidate or proposition. LSA-Const. Art. XI, § 4 states:
 "No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated to a candidate or political organization. This *Page 2 
provision shall not prohibit the use of public funds for dissemination of factual information relative to a proposition appearing on an election ballot."
This constitutional provision and its application have been scrutinized in Godwin v. East Baton Rouge Parish, 372 So.2d 1060 (La.App. 1st Cir. 1979); writ den.; 373 So.2d 527 (La. 1979). The court examined LSA-Const. Art. XI, § 4 and concluded:
 ". . . [LSA-Const. Art. XI, § 4] was obviously intended to protect the public fisc by prohibiting expenditure of public funds for expressly proscribed purposes, namely, to promote or oppose any candidate for office, to promote or oppose the cause of any political organization, or to promote or oppose passage of any proposition submitted to the electorate. Additionally, the provision is designed to prevent public officials from using public funds to support or oppose candidates, parties or propositions." (Emphasis added).
The Election Code adopts verbatim the language of the constitutional provision in LSA-R.S. 18:1465, making the use of public funds for political purposes illegal. This office has previously issued opinions indicating that the dissemination of purely factual information via advertisement or publication may be lawfully paid with public funds. See Attorney General Opinion Number 89-418 (advertisements may be published concerning an upcoming tax election and paid for with public funds where the authority disseminates purely factual information); Attorney General Opinion Number 91-634 (review of letters concerning drainage proposition determined to be lawful).
However, the facts as you relate in your letter indicate the letters would "promote" the Constitutional Convention and "advocate" its results. A construction of this language would indicate the proposed letter would urge the electors to vote in favor of an amendment to the Constitution, which is clearly what the constitutional provision and statute seeks to prohibit.
There is a further prohibition against such printing within LSA-R.S.43:31(D), which provides:
 "No funds appropriated for printing purposes or otherwise shall be used to urge any elector *Page 3 
to vote for or against any candidate or proposition on an election ballot nor shall such funds be used to lobby for or against any proposition or matter having the effect of law being considered by the legislature or any local governing authority. This provision shall not prevent the normal dissemination of factual information relative to a proposition on any election ballot or a proposition or matter having the effect of law being considered by the legislature or any local governing authority."
Finally, there is a further restriction against advertisements being paid for with public funds contained in LSA-R.S. 43:111.1, which provides:
 "No public funds shall be used in whole or in part for the payment of the cost of any advertisement containing therein the name of any public official whether elected or appointed; provided, however, that the provisions of this section shall in no case be construed to apply to advertisements or notices required or authorized by law to be published or to any advertisements placed by any public agency or body authorized by law to advertise in the furtherance of its functions and duties." (Emphasis added).
There is a question as to whether the video constitutes an advertisement as defined by statute. This office has previously construed the term "advertisement" to mean a public notice which is usually published in the mass media or broadcast over the air. See Attorney General Opinion Number 83-57.
In the instant case, the type of video you mention will be distributed to the media for telecast. The Governor will appear in the video. Presumably, the content of the video will be similar to the content of the letters distributed to residents.
This office is of the opinion that such a presentation to be disseminated to the general public constitutes an advertisement. An elected official will be named in the video, in contradiction to the statute. Production costs, such as the *Page 4 
utilization of an Archives photographer to film the video, may not be paid for with public funds. This conclusion is in accord with a previous opinion from this office, which concluded public funds could not be utilized to pay for an advertisement promoting the passage of a proposed constitutional amendment. See Attorney General Opinion Number 79-1191, a copy of which is enclosed.
We trust this interpretation of the law is helpful to you. Should you have further questions, please do not hesitate to contact our office.
 Yours very truly,
 RICHARD P. IEYOUB
 Attorney General
 BY:__________________________
 Kerry L. Kilpatrick
 Assistant Attorney General *Page 1 
 OPINION NUMBER 83-57
22. . . DISTRICT PROSECUTING ATTORNEYS 90-A-1. . . PUBLIC FUNDS PUBLIC CONTRACTS
District attorney may include his name on educational or anti-crime campaign pamphlet which is not disseminated to general public R.S. 1:3
R.S. 43:111.1
Honorable Ossie Brown District Attorney Nineteenth Judicial District 222 St. Louis Street Baton Rouge, Louisiana 70801
Dear Mr. Brown:
In your letter of January 18, 1983, you requested an opinion of this office as to whether it is permissable to place your name on brochures and documents which are distributed by the District Attorney's Office in educational campaigns or campaigns against crime.
R.S. 43:111.1, which is found in the Chapter relative to State Printing, provides as follows:
 "Advertisements paid for with public funds, restrictions
 No public funds shall be used in whole or in part for the payment of the cost of any advertisement containing therein the name of any public official whether elected or appointed; provided, however, that the provisions of this section shall in no case be construed to apply to advertisements or notices required or authorized by law to be published or to any advertisements placed by any public agency or body authorized by law to advertise in the furtherance of its functions and duties."
Thus, we must resolve the issue of whether such a pamphlet constitutes an "advertisement". R.S. 1:3
provides as follows: *Page 2 
 "Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.
 The word `shall' is mandatory and the word `may' is permissive."
We have reviewed numerous cases construing the term "advertisement" as well as the dictionary definition of the term and the consensus is that it is a public notice which is usually published in the mass media or broadcast over the air.
The type of specialized pamphlet you mention is to be distributed by your office to a limited number of persons for educational and anti-crime campaigns, and will not be disseminated to the public generally through newspapers, radio or television; therefore, it is not a public notice or advertisement.
Accordingly, it is the opinion of this office that you may legally include your name on an educational or anti-crime campaign pamphlet which will not be disseminated to the public generally.
 Very truly yours,
 WILLIAM J. GUSTE, JR.
 Attorney General
 BY:__________________________
 KENNETH C. DEJEAN
 Chief Counsel *Page 1 
 OPINION NUMBER 89-418
\ill\
Mr. Kenneth A. Loftin, Project Director Northeast Louisiana Juvenile Detention Center Authority Post Office Box 427 Coushatta, Louisiana 71019
Dear Mr. Loftin:
You have requested the opinion of this office concerning whether the Northeast Louisiana Juvenile Detention Center Authority may contract with a consultant whose job would be to conduct a survey over the seven parish area which the authority serves. Also, you wanted to know what type of information the authority might publish and distribute to the voters in a tax election when the tax would be to the benefit of the authority.
The answer to your first inquiry is found in La. R.S. 15:1097.5 which provides in Part: "The board generally may perform any function and exercise any power necessary, requisite or proper for the administration and management of the affairs of the commission." I believe this broad statement of power gives the authority discretion to conduct a survey or contract for any service that the authority determines to be helpful to its "administration and management."
What information the authority may publish regarding the tax election is determined by La. Const. Art. XI, Sec. 4; and La. R.S. 18:1465. This law reads as follows:
 La. Const. Art. XI, Sec. 4.
 No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated to a candidate or political organization. This provision shall not prohibit the use of public funds for dissemination of factual information relative to a proposition appearing on the election ballot. *Page 2 
 La. R.S. 18:1465.
 R.S. 18:1465 provides:
 Sec. 1465. Prohibited Use of Public Funds.
 A. No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated to a candidate or political organization. This provision shall not prohibit the use of public funds for dissemination of factual information relative to a proposition appearing on an election ballot.
 B. Whoever violates any provision of this section shall be fined not more than five hundred dollars or be imprisoned for not more than six months, or both. On a second offense or any succeeding offense, the penalty shall be a fine of not more than one thousand dollars or imprisonment for not more than one year, or both.
After reading the above provisions, it seems that the authority may, as you stated in your letter, "publish information about the authority, present a need for a center, and present other factual information about the cost of the center, programs, etc." If the authority disseminates purely factual information and does not urge the electors to vote for or against the tax, any advertisement or publication may be paid for with public funds.
I trust that this answers your inquiry. If I can be of any further assistance, please let me know.
 Sincerely,
 WILLIAM J. GUSTE, JR.
 Attorney General
 BY:__________________________
 GLEN R. DUCOTE
 Assistant Attorney General *Page 1 
 OPINION NUMBER 91-634
Honorable Lloyd F. Giardina Councilman, District 1 and 2 Jefferson Parish Post Office Box 9 Gretna, Louisiana 70054
Dear Mr. Giardina:
Your request for an Attorney General opinion has been assigned to me for disposition. You enclosed with your request copies of four (4) letters dated February 4, March 15, June 13 and July 15, 1991 from James E. Lawson, Jr., a Jefferson Parish councilman to residents of his district. Specifically, you ask whether the letters may legally be distributed and paid for with public funds, "since this is an election year." I am assuming all letters were in fact paid for with public funds.
Article 11, § 4 of the Louisiana Constitution of 1974 states as follows:
 § 4. Prohibited Use of Public Funds
 Section 4. No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated to a candidate or political organization. This provision shall not prohibit the use of public funds for dissemination of factual information relative to a proposition appearing on an election ballot.
See also La. R.S. 18:1465,; cf. also La. R.S. 43:31(D). To paraphrase relevant portions, public funds may not be used to promote or defeat any candidate or proposition, though they may be used to disseminate factual information. Previous opinions *Page 2 
have recognized that the distinction between what is prohibited under the above may not be clear. Relevant factors that may be considered to determine the propriety of a particular expenditure include an examination of the purpose for the expenditure of public funds, the intent of the public agency and the reasonable effect such expenditure would have upon electors. Atty. Gen. Op. Nos. 76-307, 79-1191, 89-418 and 90-126A.
An examination of the attached letters reveals that drainage projects are discussed. All projects discussed have been funded. No particularproposed drainage project is specifically urged. Neither is there any indication that a particular drainage proposition was being considered. While certain language in the letters may have the cumulative effect of promoting drainage projects, generally, the letters as a whole cannot be generally characterized as urging any elector to vote for any drainage proposition.
The letters should also be examined to determine whether any elector is being urged to vote for or against any candidate. Clearly, the author is "happy" to report the "good news" that drainage projects have been funded by the Council by a 6-0-1 vote, even though recent drainage propositions failed in an election. One letter notes that, "Lloyd Giardina is the only councilman who did not support all of the drainage improvements." While the one sentence quoted above does cause this office concern, again the letters as a whole cannot be generally characterized as urging any elector to vote for or against any candidate.
I trust this opinion responds to your inquiry. If I can be of any further assistance, please do not hesitate to contact me.
 Very truly yours,
 RICHARD P. IEYOUB
 Attorney General
 BY:__________________________
 JAMES C. HRDLICKA
 Assistant Attorney General *Page 1 
 OPINION NUMBER 79-1191 33 — ELECTIONS-SPECIAL ELECTIONS 36 — ELECTIONS-CAMPAIGN PRACTICES
Article XI, Section 4, 1974 La. Constitution
The proposed advertisement submitted by the La. Assessors' Assoc. seeks to support the passage of a constitutional amendment rather than disseminate purely factual information. Therefore, public monies can not pay for the running of this advertisement
Honorable Brian R. Bubrig President, Louisiana Assessors' Association Post Office Box 36 Pointe-a-la-Hache, Louisiana 700
Dear Mr. Bubrig:
Our office is in receipt of your letter of October 12, 1979, to your fellow Louisiana assessors and the attached proposed advertisement prepared by Frank Granger, Jr., Assessor of East Baton Rouge Parish, regarding proposed constitutional amendment No. 1 which will appear on the October 27th ballot. As we understand your request, you ask whether this advertisement may be paid for by public funds.
As you know, Article XI, Section 4 of the 1974 Louisiana Constitution states:
 "No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated to a candidate or political organization. This provision shall not prohibit the use of public funds for dissemination of factual information relative to a proposition appearing on the election ballot."
Our office has very carefully reviewed the proposed advertisement concerning constitutional Amendment No. 1. Based upon this review, it is the opinion of this office the proposed advertisement takes a stand in support of the passage of constitutional Amendment No. 1 and does not disseminate purely factual information. For this reason, it is our opinion this advertisement could not be paid for with public funds. *Page 2 
It is hoped this opinion has answered your question. If we can be of further assistance, please contact us.
 Sincerely,
 WILLIAM J. GUSTE, JR.
 ATTORNEY GENERAL
 BY:__________________________
 TOMMY D. TEAGUE
 STAFF ATTORNEY *Page 1 
 OPINION NUMBER 92-127
\ill\
Mr. Grover Austin, CPA Assistant to the Legislative Auditor 1600 Riverside North P.O. Box 94397 Baton Rouge, LA 70804-9397
Dear Mr. Austin:
You have requested an opinion of the Attorney General regarding additional compensation to, and advertising practices of, clerks of district courts. Accompanying your request is a memorandum from the Director of your Investigative Division. The following summary of facts is drawn from your submissions:
The District Clerk of Court ("Clerk") produces a weekly publication called the "Clerk's Register." The Clerk sells this publication and deposits the proceeds from the sales in a special account that is being used for personal purposes. The publication was prepared by clerk of court employees using office equipment and postage. The Clerk is responsible for maintaining the information contained in the newspaper as part of his legislatively imposed duties.
Your first question is whether it is permissible for the Clerk to issue this publication containing information that the Clerk is responsible for maintaining as part of his official duties, and to retain the proceeds from the sale of the publication for personal use.
The Public Records law appears to allow a clerk of court, as custodian of the records, to provide copies to persons so requesting and to collect reasonable fees for same. See LSA-R.S. 44:32(C). If the Clerk is disseminating public records information in a newspaper to persons frequently requesting it and charging reasonable fees for copies, this action appears to be within the ambit of the Public Records Law. However, the Clerk's annual compensation is fixed by law in LSA-R.S.13:761 and 782. Any compensation the Clerk *Page 2 
receives in excess of that set by statute, including fees generated by the distribution of the newspaper in question, should not be diverted for personal gain, but rather should be used for operations of the Office.
Your second question regards the same publication and asks if the Clerk's employees and equipment had not been used, would it be proper for the Clerk to distribute the publication for personal gain.
It is the opinion of this office that, regardless of whether the Clerk uses personnel and equipment belonging to the office in the publication of the newspaper, receiving fees \ill\ personal use in excess of his statutory compensation is legal\ill\ impermissible. It is not the publication of the newspaper containing information the Clerk is responsible for maintaining as part of his official duties, but rather the personal gain above the maximum compensation allowed by law that is inappropriate.
You ask whether the Clerk's personal use of the fees derived from the publication of the newspaper violates any criminal or civil laws. With regard to criminal acts, we believe it would be more suitable that the appropriate district attorney address your questions. Therefore, we recommend that you contact the district attorney re possible violations of criminal statutes.
LSA-R.S. 42:1461 imposes a personal obligation on all public officials and employees, including clerks of court, not to misapply, convert, etc., any funds or property under the custody or control of the public entity in which the office or employment is held. The breach of this obligation gives \ill\ to an action in favor of the public entity for the recovery of such funds or property.
Further, the above activity may be in violation of our Code of Governmental Ethics. Enclosed is a copy of Advisory Opinion No. 91-037, issued on June 28, 1991, by the Board of Ethics for Elected Officials (the "Board"). You may wish to submit the factual scenario involving these activities to the Board for its review.
You next state that it has been alleged that the Clerk placed books of poems paid for with public funds in hospitals located within the parish. The books contain an inscription informing the reader that the Clerk and his staff are responsible for its *Page 3 
being placed in the hospital. The inscription contains the Clerk's name.
You question the propriety of such action and state that you believe the expenditure to be in violation of LSA-R.S. 43:111.1.
LSA-R.S. 43:111.1 provides as follows:
 "No public funds shall be used in whole or in part for the payment of the cost of any advertisement containing therein the name of any public official whether elected or appointed; provided, however, that the provisions of this section shall in no case be construed to apply to advertisements or notices required or authorized by law to be published or to any advertisements placed by any public agency or body authorized by law to advertise in the furtherance of its functions and duties."
Attorney General Opinion No. 90-126A, contains a not discussion of advertising. This opinion states that a distinction must be made between lawful public information unlawful public relations, a distinction which is well-\ill\ in Louisiana law. The opinion also points out that \ill\ Attorney General adopts the distinction stated in the Louisiana Constitution, as interpreted and explained by Godwin v. \ill\ BatonRouge Parish, 372 So.2d 1060 (La.App. 1 Cir. \ill\ The distinction was also adopted for general application to this issue without limitation to the election campaigns in Godwin.
That case provides the legal basis for the interpretation expressed in Opinion No. 90-12\ill\A that the use of public funds to finance public techniques to manipulate public opinion \ill\ public issues to create a body of public opinion favorable to \ill\ public official or entity, isultra vires. The use of public funds to provide a public information function of a state office is integral to its constitutional and/or statutory power and function and is lawful if its intent is to be factual\ill\ informative to the public. The public information \ill\ recognized as lawful is consistent with democratic values and essential to conformation to them by the government. Fact-based information disseminated to the public fosters public trust, and facilitates public respect for government. *Page 4 
That opinion also points out that the expenditure of public funds for fact-based information is not unlawful per se. It is the purpose for which the public funds are spent, and the intent of the public official who makes the expenditure which control the legal character of the expenditure.
Initially, there is a question as to whether the publication with inscription constitutes an advertisement. This office has previously construed the term "advertisement" to mean a public notice which is usually published in the mass media \ill\ broadcast over the air. See Attorney General Opinion \ill\ 92-484 and 83-57. We have no indication of how many books were placed in the various hospitals. However, the publication in question, does not appear to have been disseminated to the public, generally, through newspapers, radio, or television \ill\ Hence, we conclude it is not an "advertisement" as that \ill\ used in LSA-R.S. 43:111.1. We now focus upon the applicab\ill\ of Article VII, § 14 of the Louisiana Constitution of 1974 on this issue.
Article VII, § 14(A) of the Louisiana Constitution (1974) provides the following with regard to public funds:
 "Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private."
The Supreme Court, adopting the jurisprudence interpreting an identical provision of the 1921 Constitution, has interpreted La. Const. Art. VII, § 14 (1974) to be violated "whenever the State or a political subdivision seeks to give up something of value when it is under nolegal obligation to do so." City of Port Allen v. Louisiana RiskManagement, Inc., et al., 439 So.2d 399, 401 (La. 1983)
This requirement of a legal obligation to expend funds is the threshold but not the only predicate for the constitutiona\ill\ of the expenditure. The expenditure must also be for a public purpose and create a public benefit proportionate to the \ill\ A public purpose and benefit is always presumed where the legal obligation to expend the funds is established by constitutional or statutory mandate. To enjoy this presumption, the legal *Page 5 
authorization must be an obligation or public duty authorized by law. In other words, the purpose and power for the expenditure must be sanctioned by laws. The public officer or entity acts as an instrument of the law, and pursuant to the authority granted by law, rather than his or its perception of the public good.
To allow unrestricted expenditures of public funds by any and all political subdivisions, public agencies, entities or officers as long as those entities or persons can imagine some species of "public good" or "public benefit" resulting therefrom, would be to authorize a fragmentation and incoherence in fiscal policy at all levels of state government. This, Art. VII, § 14 seeks to prevent by requiring valid legal authority (even at the contractual level) for all alienations of public funds.
The effect of Art. VII, § 14, as interpreted by the Supreme Court and the Attorney General, is to give further constitutional protection and definition to the plenary power of the legislature over the public fisc, and to insure that political subdivisions conform to statewide general fiscal policy rather than formulate it on the basis of local expediency within their own territorial jurisdictions. The integrity of the constitutional power over the public fisc \ill\ therefore, sustained by a statewide constitutional norm requiring a legal obligation for public expenditures that is either ordained by law, by the legislature or constitution, or authorized (i.e. power to contract) by the same source of law.
This office is unaware of any constitutional or statutory provisions which obligate the Clerk to distribute books of poems bearing an inscription containing his name to parish hospitals.
Although the Clerk's goals may be admirable and creative, the distribution of the publication constitutes a violation of Article VII, § 14. Further, we are of the opinion that the publication is more aligned to the concept of prohibited public relations rather than mere public information. This conclusion is consistent with those expressed in Attorney General Opinion Nos. 92-494, 92-204 and 77-933.
You further allege that the Clerk is the sponsor of a radio broadcast relating to sports and environment which is paid for from public funds. You question the propriety of this activity. *Page 6 
We are of the opinion that if the Clerk is identified by name during the course of the radio broadcast, LSA-R.S. 43:111.1 has been violated. Unlike the book of poems, the radio broadcast falls within the definition of "advertisement" as that term is used in Section 111.1. Further, and even in the absence of the Clerk's name, the expenditure of public funds for this purpose constitutes a violation of Article VII, § 14 for the same reasons discussed in answer to your previous question. See also Attorney General Opinion Nos. 92-737, 76-713, 75-1111, and 75-589.
You finally allege that the Clerk spends time researching oil and gas records for an oil company during office hours and receives compensation, in addition to his statutory salary, from the company. You question the propriety of this transaction.
We believe the same analysis applies to this question as applied to your first question regarding the weekly publication. Thus, we reach the same conclusion.
Trusting the above answers adequately respond to your request, I remain
 Yours very truly,
 RICHARD P. IEYOUB
 Attorney General
 BY:__________________________
 ROBERT E. HARBOUN, III
 Assistant Attorney General
 Enclosure *Page 1 
 ADVISORY OPINION NO. 91-037
DATE: June 28, 1991
RE: The earning of outside income by clerks of court through activities relating to their offices' operations.
 BOARD OF ETHICS FOR ELECTED OFFICIALS
The Board of Ethics for Elected Officials has received information suggesting that some Louisiana clerks of court may be earning outside income through publishing, research or other activities that relate to the filings, records and activities of their clerk of court offices. Out of a concern that this practice may not be confined to those particular cases of which the Board has become aware, the Board is issuing this general advisory opinion for the purpose of advising all Louisiana clerks of court of the applicable provisions of the Code of Governmental Ethics, which provisions have the effect of substantially limiting a clerk of court's ability to engage in such activities on a privately compensated basis.
It should be noted that the jurisdiction of the Board of Ethics for Elected Officials is limited to the administration and enforcement of the Code with regard to elected officials. The provisions of the Code discussed in this opinion are also applicable to employees of clerks of court offices; however, the Board of Ethics for Elected Officials has no jurisdiction or authority with regard to enforcing the Code as to those employees. Rather, administration and enforcement of the Code with respect to *Page 2 
all non-elected officials and employees is within the jurisdiction of the Louisiana Commission on Ethics for Public Employees.
The provision of the Louisiana Code of Governmental Ethics that is applicable to this general issue is Section 1111 C(1)(a) of the Code, which provides as follows:
 § 1111. Payments from nonpublic sources
 * * * * * C. Payments for nonpublic service.
 (1) No public servant shall receive any thing of economic value for any service, the subject matter of which:
 (a) Is devoted substantially to the responsibilities, programs, or operations of the agency of the public servant and in which the public servant has participated; . . . .
The term "service" is defined in Section 1102 (24) of the Code to mean "the performance of work, duties, or responsibilities, or the leasing, rental, or sale of movable or immovable property." Pursuant to this definition, a "service" includes not only work such as research, but also the sale of publications or similar items.
In short, this provision has the impact of prohibiting a clerk of court from earning any outside income for the performance of any services or the publication of any materials if the subject matter of the work or publication is substantially related to the operations of the clerk of court's office. The Board construes this section of the Code as prohibiting a clerk of court from selling any service, publication or information concerning the records, filings, or other particular operations of the clerk of court's office. Examples of such prohibited outside work include, *Page 3 
but not by way of limitation, title asbstract work, title research, copy services, court calendar services, newsletters, etc.; that is, any service that relates to the clerk of court's office.
In understanding this prohibition it should be noted that the prohibition may be applicable even in situations in which the activity at issue is not a service or publication that is required to be provided by the clerk of court. Rather, the thrust of Section 1111 C(1)(a) of the Code is to address those situations where income may be earned through activities that are not a requirement of an official's public duties, but are substantially related to his agency's activities.
A copy of this opinion is being mailed to all Louisiana clerks of court. The Board's intent is to put all Louisiana clerks of court on notice of the requirements of Section 1111 C(1)(a) of the Code and of the Board's interpretation of these provisions. This opinion should be read broadly to address any situations in which clerks of court are earning any outside income with respect to publications, research, or any service that relates to the records, filings, information, or activities of the clerk of court's office.
The Board will issue advisory opinions, upon written request, to any clerk of court who has a question concerning whether any particular activity in which he or she is engaged is *Page 4 
prohibited by Section 1111 C(1)(a) of the Code.
s/ Robert L. Roland Robert L. Roland, Chairman
s/ Edwards Barham Edwards Barham, Member
s/ Harry McCall, Jr. Harry McCall, Jr., Vice-Chairman
s/ Carlos G. Spaht Carlos G. Spaht, Member
s/ Dr. John Tassin Dr. John Tassin, Member